The Honorable Paula L. McCandlis

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. CR20-032JCC |
|---|---|
| Plaintiff, | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REOPEN DETENTION HEARING** |
| v. | |
| KALEB COLE, | |
| Defendant. | |

The United States, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Thomas Woods, Assistant United States Attorney for said District, respectfully opposes defendant's motion to reopen his detention hearing.

Cole does *not* seek his release because of COVID-19.  Rather, he generally claims that he is neither a danger to the community nor a risk of flight, making arguments that he could have raised at his initial appearance ***over two months ago***.  Cole has offered no new evidence or circumstances in support of release, and his motion should be denied on this basis alone.

Alternatively, Cole should remain detained because he poses a serious risk of danger to the community.  Cole is a neo-Nazi who has repeatedly advocated violence against Jews and other minorities.  He has stockpiled weapons, and, most alarmingly,

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

possessed an assault rifle and ammunition after Seattle police officers seized his arsenal pursuant to an Extreme Risk Protection Order in September 2019. Indeed, he bragged to an undercover officer that the police had failed to seize a machine that he owned to make firearms, and talked about saving money in order to acquire additional firearms. He has attended multiple hate camps and gatherings, where members received weapons training, and filmed videos advocating violence. His history is so extreme that Canada in 2019 permanently barred him from ever entering the country on the ground that he was a member of an organization that might engage in terrorism. Cole presents a serious risk of hurting or killing someone, a risk that cannot be mitigated by conditions of release, particularly in this climate where Probation's resources are limited.

Cole is also a risk of flight. He has recent international travel to both Europe and Canada, and is believed to have forged ties with other extremists overseas. After he was served with the Extreme Risk Protection Order, he fled Washington State for Texas, and avoided returning because he was the subject of an outstanding arrest warrant. He also discussed taking steps to avoid detection by law enforcement. He now proposes to live with family in Washington State. His family—however well intentioned—has, for many years, not been able to serve as an effective curb against his extremist behavior. He remains both a danger to the community and risk of flight and should remain detained.

## FACTUAL OVERVIEW

### A. Cole's Background Extremist Behavior

Kaleb Cole is a leader of the Atomwaffen Division ("AWD"), a neo-Nazi group that advocates violence against Jews and other minorities. AWD members have been responsible for multiple murders, and have advocated violent acts aimed at overthrowing the government. AWD came to the attention of law enforcement in May 2017, when D.A. was arrested for murdering two of his roommates near Tampa, Florida. D.A. had been a member of AWD, as were his roommates. After his arrest, D.A. admitted to the murders of his two roommates and told investigators he had committed the murders after he had converted to Islam and that the murders were his attempt at keeping the members

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of AWD from committing planned acts of terror related to the group's ideology. D.A. claimed AWD had plans to use explosives to damage infrastructure and to commit acts of violence.

After D.A.'s arrest, another roommate, B.R., who was the leader of AWD, was encountered by law enforcement at the residence unharmed. In the residence, law enforcement found bomb-making precursor chemicals and hexamethylene triperoxide diamine, a high explosive chemical. B.R. subsequently was convicted of explosives charges.

Following the arrest of B.R., AWD selected Cole, then a resident of Arlington, Washington, and J.D., a resident of Texas, as its leaders. Members of AWD also formed a relationship with a Denver, Colorado resident who is the writer of the book, "Siege," which serves as the basis for AWD ideology. The book, which is a collection of neo-Nazi newsletters authored by the Colorado resident, advocates for the leaderless resistance and lone offender strategies as a viable means to accelerate the collapse of the United States Government, which members of the AWD believe to be controlled by Jews and other minorities.

On January 25, 2018, AWD hosted a "Death Valley Hate Camp" in Las Vegas, Nevada, where members trained in hand-to-hand combat and firearms, and created neo-Nazi propaganda videos and pictures of themselves posing with weapons.[1] Cole coordinated the camp, beginning planning in early October 2017. A California AWD member was expected to be at this hate camp, but could not attend due to being arrested for the murder of an openly gay Jewish college student.

In December 2018, Cole traveled to Europe, and was inspected upon returning to the United States. His phone contained a number of highly concerning photographs. For

---

[1] Throughout his time in AWD, Cole appeared in multiple promotional videos. Two of those videos are being submitted to the Court as Exhibits A and B. He appears in both videos firing weapons.

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

example, he appears on the right in this photograph, posing with another individual in front of the gates to Auschwitz:



He also had a photograph showing a person in an AWD mask posing in front of a picture of concentration camp victims:



Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

His phone made clear that he had met extremists overseas, as shown by this photograph in which he poses with others before an AWD banner:



He also had photographs of multiple stashes of weapons, including this one:



Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In September 2019, the Seattle Police Department served an Extreme Risk Protection Order against Cole, given the serious risk that he posed to public safety. Officers seized a stockpile of weapons from him:



Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

After being served the Extreme Risk Protection Order, Cole left Washington State for Texas with fellow AWD member B.A.  On November 4, 2019, police stopped the two of them for speeding.  The officer immediately spotted a large knife in the vehicle's console.  Officers recovered a loaded gun under B.A.'s seat and marijuana from various locations.  Officers also recovered from the trunk three assault rifles, a large quantity of ammunition, and magazines.  B.A. claimed that all of these items belonged to him, but Cole later told an informant that some of the ammunition belonged to him.

 

After the seizure, King County charged Cole with violating the Extreme Risk Protection Order.  Cole told his co-conspirators during a chat that he was actively avoiding the warrant, stating "Well that settles it, I'm not returning," and stating "DAMN RIGHT" when told that the warrant was non-extraditable:

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970





Cole also expressed concern that the FBI had his license plate, and talked about acquiring a car in the future that would not be under his name.

**B. The Offense**

As documented in the Complaint, Cole helped organize a nationwide campaign to intimidate journalists and minorities with threatened violence. Cole, among other things, identified some of the victims to target and helped create the posters. The posters were threatening—and were designed to be tacked onto victims' houses with their personal information written at the bottom of the poster. One of the posters showed an AWD member holding a Molotov cocktail before a burning house:

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In another, persons in AWD masks brandish firearms, with the message "Death To Pigs" and "These People Have Names and Addresses." Finally, in another poster, victims were told: "We Are Watching . . . We Know Where You Live. Do Not Fuck With Us."



Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In January 2020, Cole disclosed the plot to an undercover officer, who visited him. Cole greeted the undercover officer wearing the following:



Cole made clear that the purpose of the plot was to intimidate the victims and make them afraid. He told the undercover officer: "[W]e're you know it just like a hey, we know where you live don't fuck with us. It's just a little little friendly reminder right on the doorstep." He similarly said: "Our message is don't fuck with us...we can find where these people live….As far as anything coming back on me I don't know anything, I'm outside of Washington for example so you cant prove that I said to do anything."

Cole told the undercover officer that he was taking extra precautions in light of the Extreme Risk Protection Order. Specifically, he said that law enforcement appeared to be "paying attention to my finances" and that he wouldn't "be making that mistake again." He also said he had lived in his car for a period to "save money, get more guns." He bragged that police had not seized his machine used for making guns, and that he had

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

left it in Washington with his "crew up there."  Cole said that he had plans for "doomsday," which he considered "around the corner," and that he planned to "get what [he] fucking needs and have it elsewhere [*i.e.*, not in his house]."  He reiterated to the undercover officer that he was avoiding Washington because of the outstanding warrant.

On February 26, 2020, Cole was arrested.  Officers recovered from his room an assault rifle:



Officers also recovered a loaded magazine and a host of Nazi and AWD materials. Officers recovered from Cole's car seven magazines, five of which were loaded, as well as a box of ammunition.

## **ARGUMENT**

### A. Legal Standard

Under the Bail Reform Act, a defendant cannot reopen a detention hearing unless the "judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

If the defendant meets this standard, and detention is re-opened, the first question is whether Cole is potentially eligible for detention. In this case, he is eligible for multiple reasons. First, Cole is charged with a crime of violence, *i.e.*, Mailing Threatening Communications, which involves a threat to injure another, 18 U.S.C. § 876(c). *See* 18 U.S.C. § 3142(f)(1)(A). Second, there is a serious risk that Cole will flee. *See id.* § 3142(f)(2)(A).

The next step in the detention analysis is whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required, and the safety of any other person and the community. 18 U.S.C. § 3142(f). The standards of proof differ with respect to the "risk of flight" and "dangerousness" prongs of the statute. A detention order based on the defendant's risk of flight ordinarily must be supported by only a preponderance of the evidence. *See, e.g.*, *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A detention order based on the defendant's dangerousness generally must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

The Court must determine "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). The Court should consider:

(1)  the nature and circumstances of the offense charged . . . .;

(2)  the weight of the evidence against the person;

(3)  the history and characteristics of the person, including—

   (A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release . . .

(4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## B. Cole Has Not Presented Any New Circumstances or Evidence Sufficient To Reopen the Detention Hearing

On February 26, 2020, Cole was arrested in the Southern District of Texas. He elected to have his detention hearing in Washington, and was transferred, arriving March 13, 2020. At his initial appearance in this District, Cole stipulated to detention. Some two months later, on May 15, 2020, Cole filed the instant motion. It contains no new evidence or circumstances that were not readily available at the time of his initial appearance. Rather, his motion essentially rests on three grounds: First, Cole emphasizes that he has no prior criminal convictions. Second, Cole states that he has supportive family in the area, including his father. Third, Cole puts forward a deeply-flawed assertion that his acts are somehow protected by the First Amendment. All of these assertions could have been made months ago at the initial appearance, and are not a basis to reopen detention. His motion should be denied on this basis alone.

## C. Cole Presents Both a Danger to the Community and a Risk of Flight

In the event the Court does re-open the detention hearing, the Court should conclude that Cole is both a danger to the community and a risk of flight.

### 1. Nature and Circumstances of the Offense

This offense was extremely serious. Cole targeted victims because of their religion and ethnicity, and otherwise sought to retaliate against journalists who had reported on AWD unfavorably. The posters that he helped develop threatened victims with violence, with pictures of Molotov cocktails, a burning building, and firearms. As reflected by his comments to the undercover officer, Cole sought to instill fear and intimidation in his victims, and to make them feel unsafe in their own homes. His conduct was made all the more worse by the fact that many of these victims are now confined to their homes, where they were victimized, because of the current health crisis.

//
//
//

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Indeed, the government has heard from multiple victims, and they are incredibly fearful of the prospect of Cole being released.[2]

In addition, Cole took steps to attempt to hide his conduct by, for example, using an encrypted chat service. He also made numerous comments that he was prepared to hide weapons and put assets in other people's names to avoid law enforcement detection. In light of his comments and words, the Court cannot have any assurance that Probation would have full visibility into Cole's conduct were he to be released.[3]

### 2. Weight of the Evidence

The weight of the evidence is overwhelming. As stated in the complaint, Cole's encrypted chats regarding the operation were recorded. Cole also talked about the plot with an undercover agent during a recorded conversation. In his motion, Cole suggests that his conduct might be protected by the First Amendment. This contention is frivolous—the First Amendment does not give individuals the right to trespass on people's property, and affix posters that threaten property damage and violence. In one of the posters, individuals brandish guns, with the message "Death to Pigs" and "These People Have Names and Addresses." In another poster, an individual in a mask stands outside a burning house holding a Molotov cocktail with the message "Your Actions Have Consequences." Finally, another poster states: "We Are Watching . . . We Know Where You Live . . . Do <u>Not</u> Fuck With Us." All of this conduct is well outside the protections of the First Amendment. *See Virginia v. Black*, 538 U.S. 343, 360 (2003).

### 3. History and Characteristics of the Defendant and Danger to the Community

Cole has repeatedly threatened violence. He has stockpiled firearms, and possessed a dangerous firearm after his arsenal was seized by the Seattle Police

---

[2] Some of the victims submitted victim impact statements. They are attached as Exhibit C.
[3] Cole notes that two other defendants were released on bond, Taylor Parker-Dipeppe and Johnny Garza. Neither individual, however, was associated with firearms. In addition, unlike Cole, neither individual was a leader of this conspiracy. Finally, the Court, in releasing Parker-Dipeppe, noted that he had health issues that made him especially vulnerable to COVID-19. In his motion, Cole does not maintain that he has any particular health concerns.

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Department. After the seizure, he talked about living out of his car to save money to acquire firearms. He also emphasized that he planned to take actions to avoid detection from law enforcement, including acquiring a new car that was not in his name.

In addition, Cole actively avoided Washington after King County issued a warrant for his arrest.[4] He also has a history of international travel, including ties with extremists overseas. He spent most of December 2018 and nearly two months in spring 2019 in Europe, believed to be meeting with extremists.

Finally, Cole emphasizes that he has family in the area who support him. Cole was surrounded by his family during much of the activity documented above. It is beyond doubt that—however well intentioned—his family has been unable to curb his extremist behavior. Moreover, Cole told the undercover officer that he stored guns at his father's house.

Cole is both an extreme danger to the community and a risk of flight. He could not adequately be supervised even under the best of circumstances, let alone during a period where Probation's resources are limited. The Court should deny the motion.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to reopen detention.

Dated this 22nd day of May, 2020.

                                          Respectfully submitted,

                                        BRIAN T. MORAN
                                        United States Attorney

                                        *s/ Thomas M. Woods*
                                        THOMAS M. WOODS
                                        Assistant United States Attorney
                                        700 Stewart Street, Suite 5220
                                        Seattle, Washington 98101

---

[4] In his motion, Cole maintains that the King County case is deficient because the alleged conduct occurred outside the State of Washington. Even if Cole were correct, the fact remains that he actively avoided Washington because of the warrant, demonstrating that he is a risk of flight.

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

*s/ Courtney Goertzen*
COURTNEY GOERTZEN
Paralegal Specialist
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271

Government's Opposition to Motion to Reopen Detention
*United States v. Cole*, CR20-032JCC - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970