The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>KALEB COLE,<br><br>                    Defendant. | No. CR20-032 JCC<br><br>MOTION TO SUPPRESS EVIDENCE<br><br>*Evidentiary Hearing Requested*<br><br>*Oral Argument Requested*<br><br><u>Note on Motion Calendar</u>:<br>August 27, 2021 |

I.     **RELIEF REQUESTED**

Defendant, Kaleb Cole, by his undersigned attorney, moves this Court to suppress at trial, pursuant to the Fourth Amendment to the United States Constitution and <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), all items of evidence seized by law enforcement pursuant to a search of Mr. Cole's alleged residence located at 1218 Oxon Run, Montgomery, Texas.  The Court should suppress this evidence because the affidavit for the warrant authorizing the search 1) at least recklessly omitted information material to the determination of probable cause, which rendered the affidavit insufficient to support probable cause to search the home and 2) even as written failed to establish probable cause to search the home.

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

## II.   <u>FACTS</u>

For a number of years prior to the institution of charges in the case the Federal Bureau of Investigation ("FBI") investigated an organization called Atomwaffen, of which Mr. Cole is an alleged member.  They employed a confidential informant ("CI") as part of the investigation and paid him handsomely.  The government has informed defense counsel that the CI in this case has worked as an informant for the FBI for approximately the past sixteen years.  Since 2003, he has been paid over $140,000 for this work.  More importantly, the CI has been paid $78,133.20 plus an expense advance of $4,378.60, since February 7, 2018, which almost entirely coincides with his work on the investigation into Mr. Cole and Atomwaffen.

The CI is a convicted felon and currently owns and operates a publishing company that distributes white supremacist writings.   The CI began his long career as a professional informant in exchange for consideration regarding his sentence on a federal conviction for possession of a firearm with an obliterated serial number and an unregistered silencer.  He has continued this work for pay.

This informant was the source of almost all of the information implicating Mr. Cole in the alleged criminal activities underlying this case.  On February 24, 2020, FBI Special Agent Casey Villareal submitted an application for a warrant to search Mr. Cole's alleged residence in Montgomery, Texas.  <u>See</u> Exhibit 1 (application, affidavit and warrant).  The affidavit in support of the application described a plot to create and send threatening posters to Jewish people and people belonging to racial minority groups.  The bulk of the application, as it pertained to Mr. Cole's alleged involvement in criminal activity, described communications over an app called Wire between a group of alleged co-conspirators.  <u>See</u> Exhibit 1 at 17 – 28.  The affiant asserted that Mr. Cole was a member of this group and that he used a moniker consisting of a string of

MOTION TO SUPPRESS EVIDENCE
(*Kaleb Cole*; No. CR20-032 JCC) - 2

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

symbols to communicate within the app. Id. at 18.  The affidavit does not explicitly state that this information came from the CI but defense counsel, on information and belief, believes that there is no other potential source.  The affidavit does not contain information specifically implicating Mr. Cole in the alleged plot other than the information provided by the CI.

The affidavit refers to the existence of the CI by noting in a couple of places that information came from "confidential human source (CHS) reporting."  See Exhibit 1 at 15, 17. The affidavit does not provide any details about how the CI came to possess the information included in the affidavit.  It likewise does not include any information about the scope of the CI's current or prior work as an FBI informant or track record in this capacity.   The affidavit is essentially silent regarding the CI other than noting generally that he provided some information regarding the investigation.  It certainly does not acknowledge, or even allude to, the fact that the CI is a paid informant and convicted felon.

The magistrate who reviewed the warrant application was unaware of the source of the incriminating information contained within the document, the relevant missing facts that were not included in the document, or the magnitude of the affiant's failure to establish the CI's credibility, and therefore issued the warrant as requested.  The search of the home conducted pursuant to the warrant uncovered potentially incriminating evidence.

III.    **SUMMARY OF ARGUMENT**

The Court should suppress on two separate bases all evidence seized from the residence during the execution of the search warrant.

First, the search of the residence was unlawful because the affidavit submitted in support of the warrant depended entirely on a conclusion of the affiant that was not supported by underlying facts, and as such failed to establish probable cause for the warrant to issue.   In

MOTION TO SUPPRESS EVIDENCE
(*Kaleb Cole*; No. CR20-032 JCC) - 3

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

particular, the warrant affidavit described a multitude of actions taken, and statements made, by someone in Wire chats employing a user-name consisting of a string of symbols.  The affidavit simply identified Mr. Cole as the user of this moniker without providing any basis for the affiant's conclusion that the user was Mr. Cole, which is far from self-evident as described below.  And, other than statements associated with the person using the symbol string moniker, the affidavit contained almost no information associating Mr. Cole with criminal activity.  Because the affidavit did not contain sufficient information to establish probable cause to search Mr. Cole's alleged residence absent the unsupported conclusion, the search based on the warrant supported by the faulty affidavit was illegal, and the fruits thereof should be suppressed.

Second, even if the Court finds that the warrant affidavit as written provided probable cause for the search, the Court should nonetheless suppress the fruits of the search because the warrant affiant recklessly omitted information necessary to the probable cause determination, in violation of Franks v. Delaware.  Specifically, the affiant completely failed to include any information supporting the credibility of the confidential informant ("CI") in this case or put the issuing magistrate on notice of the existence of issues that reflect negatively on the CI.  This type of failure constitutes a material omission in in the warrant affidavit.  And, in this case, because essentially all of the information supporting probable cause for the warrant to issue came from the CI, when that information is removed from consideration as part of this Court's evaluation of the validity of the warrant, as it must be under Franks, insufficient information remains to support a finding of probable cause.  The Court should suppress the fruits of the warrant on this basis as well.

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

## IV.   ARGUMENT

### A.   The search warrant application failed to establish probable cause that evidence of a crime would be found in the residence.

The Court should suppress the fruits of the search of the residence because the affidavit submitted in support of the warrant depended entirely on a conclusion of the affiant that was not supported by underlying facts and therefore failed to establish probable cause.

The Fourth Amendment generally requires that police officers obtain a warrant based on probable cause to justify a seizure and search.  Terry v. Ohio, 392 U.S. 1, 20 (1968).  In order to establish probable cause, an affidavit must establish that there is a fair probability that contraband or evidence of a crime will be found in a particular place.  Illinois v. Gates, 462 U.S. 213, 238 (1983).  Probable cause determinations are to be made by viewing the "totality of the circumstances" set forth in the affidavit.  Id.  In reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit. United States v. Stanert, 762 F.2d 775, 778, amended by, 769 F.2d 1410 (9th Cir. 1985).

"Conclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause." United States v. Underwood, 725 F.3d 1076, 1081 (9th Cir. 2013)(citing United States v. Cervantes, 703 F.3d 1135, 1139-40 (9th Cir. 2012) (affording little if any weight to detective's conclusory statement that, based on his training and experience, the box in defendant's possession came from a suspected narcotics stash house)).

In the instant case, while the warrant affidavit provides details about the activities of someone who was alleged to be Mr. Cole, it does not provide any detailed information allowing the magistrate to make an independent determination that the person who made the communications in question was in fact Mr. Cole.  The affidavit simply stated, without support, that the user of the symbol string moniker was Mr. Cole.  See Exhibit 1 at 18.  And this is

MOTION TO SUPPRESS EVIDENCE
(Kaleb Cole; No. CR20-032 JCC) - 5

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

something that may not have stood out to the magistrate who issued the warrant, as the magistrate may well have thought that such a conclusion was clear and was based on evidence in the government's possession, such that it did not rise to the level of importance that a detailed description of the underlying data was necessary.  But this was not the case.

It is not entirely clear even to this day what the government's basis is for attributing this moniker to Mr. Cole.  The government has not obtained any subscriber information regarding the moniker, or information connected to IP addresses using the moniker, or digital devices connected to both the moniker and Mr. Cole.   It appears that the source of the government's belief may be the CI.  See Exhibit 1 at 17.  If this is the case, the affidavit nonetheless fails to provide any detail about the source of the information other than "CHS reporting."  Id.  This is not the kind of detailed information that allows a magistrate to make an independent determination about whether the facts in the affidavit are sufficient to provide probable cause for a search.  See Underwood, 725 F.3d at 1081.

The affidavit contains nothing particular about why or how the CI identified Mr. Cole as the user of the symbol string moniker.  And that was a fact crucial that was crucial to the probable cause determination in this case.  Without that fact, although the affidavit establishes probable cause that **someone** committed a crime, it fails to establish probable cause that **Kaleb Cole** did so.  The search warrant which was issued in reliance on this premise therefore did not comport with the requirements of the Fourth Amendment.

Where evidence is obtained in violation of the Fourth Amendment, the remedy is suppression of the fruits of the unlawful search.  See Wong Sun v. United States, 371 U.S. 471, 484 – 85 (1963).  Consequently, because the warrant affidavit issued in this case was unsupported by probable cause the fruits of the unlawful search of the residence should be suppressed.

MOTION TO SUPPRESS EVIDENCE
(*Kaleb Cole*; No. CR20-032 JCC) - 6

**B.  The Court should suppress the fruits of the search under _Franks v. Delaware_.**

The Court should suppress the fruits the search on an alternative basis as well- that the affidavit for the warrant at least recklessly omitted information material to the determination of probable cause, in violation of Franks v. Delaware, 438 U.S. 154 (1978).

In Franks, the Supreme Court held that a defendant has a constitutional right, after the _ex parte_ issuance of a warrant, to challenge the truthfulness of statements made in the search warrant affidavit.  Material omissions as well as false statements are subject to challenge. United States v. Stanert, 762 F.2d 775, 781, amended by 769 F.2d 1410 (9th Cir. 1985).  When a defendant makes a preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or omissions and (2) the affidavit cannot support a finding of probable cause without the allegedly false information, then s/he is entitled to a hearing to determine the validity of the warrant.  Franks, 438 U.S. at 171-72.  The defendant need not present clear proof that misrepresentations were deliberate or reckless in order to obtain a Franks hearing; all that is needed is a substantial showing. United States v. Gonzalez, Inc., 412 F.3d 1102, 1111 (9th Cir. 2005).[1]  The fact that probable cause existed and could have been established in a truthful affidavit will not cure a Franks error.  Baldwin v. Placer County, 418 F.3d 966, 971 (9th Cir. 2005) (citing United States v. Davis, 714 F.2d 896, 899 (9th Cir. 1983) (under Franks, "the fact that probable cause did exist and could have been established by a truthful affidavit does not cure the error.")).

---

[1] At the hearing, the defendant must show, by a preponderance of the evidence, that the statements or omissions were made either deliberately or with reckless disregard for the truth. United States v. Davis, 663 F.2d 824, 831 (9th Cir. 1981).

MOTION TO SUPPRESS EVIDENCE
(_Kaleb Cole_; No. CR20-032 JCC) - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1.  **The warrant affidavit contains material omissions that can only be characterized as deliberate or reckless.**

In order to establish meet the requirements of the first prong of the <u>Franks</u> test, the defense must show that 1) the affiant for the warrant made either a material false statement or a material omission in the warrant affidavit, and 2) the statement or omission was made intentionally or recklessly. The defense can make both showings by establishing that that FBI SA Villareal omitted from the affidavit the fact that the CI was receiving significant consideration from the FBI in exchange for his cooperation against Mr. Cole.

The Ninth Circuit has made clear that law enforcement officers must always disclose in a warrant affidavit whether an informant has an ulterior motive for providing information for a search warrant affidavit. <u>See</u> <u>United States v. Martinez-Garcia</u>, 397 F.3d 1205, 1216 (9th Cir. 2005); <u>United States v. Meling</u>, 47 F.3d 1546, 1553 (9th Cir. 1995). In <u>Martinez-Garcia</u>, the search warrant affidavit failed to disclose that the informant had a pending federal charge and that a deal was made with him to make a favorable recommendation to prosecutors in exchange for his cooperation. <u>Martinez-Garcia</u>, 397 F.3d at 1216. The Ninth Circuit held that "knowingly omit[ting] from the affidavit information related to incentives he provided to [the CI]" satisfied the first prong of the <u>Franks</u> test, i.e. that the defendant made a substantial showing that that law enforcement knowingly omitted material information from the search warrant affidavit. <u>Id</u>.

It is beyond dispute that the affiant failed to include material information in the warrant affidavit. The government has informed defense counsel that the CI in this case has worked for the FBI for approximately the past sixteen years. He began this work in exchange for consideration regarding his sentence on a federal conviction for possession of a firearm with an obliterated serial number and an unregistered silencer. He has continued this work for pay. Since 2003, the CI has been paid over $140,000 for his work with the FBI. More importantly, the CI

MOTION TO SUPPRESS EVIDENCE
(*Kaleb Cole*; No. CR20-032 JCC) - 8

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

has been paid $78,133.20 plus an expense advance of $4,378.60 in conjunction with his participation in the investigation in this case. None of this was disclosed in the warrant application, which does no more than generally refer to "confidential human source (CHS) reporting." See Exhibit 1 at 15, 17. This omission was material. See Martinez-Garcia, 397 F.3d at 1216; Meling, 47 F.3d at 1553.

The failure to disclose the benefits offered to the CI cannot be characterized as anything other than intentional or reckless. The affiant provided his bona fides as part of the application, which provides in relevant part:

> I am a Special Agent SA with the Federal Bureau of Investigation (FBI) and have been so employed since April 2008. I am currently assigned to investigate domestic terrorism in the Houston Field Office. My experience as an FBI Agent includes the investigation of terrorism cases where individuals frequently utilize computers and the Internet to coordinate and facilitate various crimes. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures.

Exhibit 1 at 9-10. It is simply not reasonable to believe that a trained FBI agent with over ten years of experience would fail to recognize the importance of information that bears on a CI's incentives to cooperate when submitting an affidavit for a search warrant based almost exclusively on information provided by the CI.

It is common knowledge that criminal informants are, rightly, viewed with suspicion. Criminal informants are, by definition, "cut from untrustworthy cloth and must be managed and carefully watched by the government and the courts to prevent them from falsely accusing the innocent, from manufacturing evidence against those under suspicion of crime, and from lying under oath in the courtroom." United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993) (evidence that informant attempted to conceal his felony criminal record is exculpatory and thus

MOTION TO SUPPRESS EVIDENCE
(Kaleb Cole; No. CR20-032 JCC) - 9

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

discoverable under <u>Brady</u>).  The use of such informants by the government thus "may raise serious questions of credibility." <u>Id</u>. (quoting <u>On Lee v. United States</u>, 343 U.S. 747, 757 (1952)). Because informants "will stop at nothing to maneuver themselves into a position where they have something to sell, [i]t is no accident that some federal jury instructions regarding an immunized witness warn jurors that such a witness 'has a motive to falsify.'" <u>United States v. Hernandez-Escarsega</u>, 886 F.2d 1560, 1574-1575 (9th Cir.1989).  Again, SA Villareal is without doubt well aware of these principles.

The failure to include the information about the CI's incentives is made more egregious by the fact that the warrant application incriminated Mr. Cole based almost solely on the alleged observations of the CI.  And it it is further compounded by the fact that the affidavit is misleading in regard to the fact that the source of all of the incriminating information regarding Mr. Cole is in fact the CI.   While the affidavit did not explicitly state that all of the information regarding Mr. Cole's statements in the Wire communications (<u>see</u> Exhibit 1 at 17 – 28) came from the CI, it is counsel's understanding that the CI is in fact the source.  This is not immediately apparent from the affidavit, which likely served to obscure this red flag from the magistrate who issued the warrant.

The materiality and nature of the omissions from the search warrant affidavit about the CI's motives for providing the information included in the affidavit cannot be classified as mere oversights.  See <u>Frimmel Management, LLC v. United States</u>, 897 F.3d 1045, 1052 (9th Cir. 2018) (finding that omissions regarding credibility of informants must have been intentional or reckless given their significance).  The defense has shown a reckless material omission in this case.

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

**2.   The warrant affidavit does not survive the redaction of the information from the CI.**

Upon the defense making a showing as to the first part of the test (here: showing a reckless omission), the Court then turns to whether the affidavit establishes still establishes probable cause as it should have read.  In this case, because the affidavit relied almost solely on the allegations of a confidential informant to provide probable cause that Mr. Cole committed a crime, and because the affidavit provided no information whatsoever establishing the credibility of the informant or information corroborating the informant's claims that Mr. Cole was the person using the symbol string moniker, the affidavit does not overcome the material omissions about the informant's credibility.

In assessing whether information from an informant is sufficient to support a finding of probable cause, courts must evaluate the totality of the circumstances with consideration of the informant's veracity, reliability and basis of knowledge.  Illinois v. Gates, 462 U.S. 213, 238 (1983).  "'To credit a confidential source's information in making a probable cause determination, the affidavit should support an inference that the source was trustworthy and that the source's accusation of criminal activity was made on the basis of information obtained in a reliable way.'" Frimmel Management, 897 F.3d at 1052 (quoting United States v. Landis, 726 F.2d 540, 543 (9th Cir. 1984)).  Courts look to several factors to determine the reliability of information from an informant, including whether the informant has a history of providing reliable information in previous investigations and any prior criminal convictions for crimes of dishonesty.  Martinez-Garcia, 397 F.3d at 1216.  Courts must also examine whether the informant's information was bolstered by independent police investigation of the tip or corroboration by other confidential informants. Id.

MOTION TO SUPPRESS EVIDENCE
(*Kaleb Cole*; No. CR20-032 JCC) - 11

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

A comparison of this case to <u>Martinez-Garcia</u> demonstrates why the facts of this case warrant suppression.  While the Ninth Circuit did not ultimately find suppression the appropriate remedy in <u>Martinez-Garcia</u>, the factors the court cited as supporting probable cause for the search, despite the reckless omission of information about consideration provided to the CI, illustrate why suppression is called for in this case, as essentially none of those factors are present here. These factors include: the CI had a track record of providing reliable information and had been polygraphed successfully; police surveilled the CI attending a meeting for a planned drug deal; the CI successfully completed a controlled buy of meth from the target of the warrant at another location; other confidential informants confirmed information in the affidavit; DMV records showed that the target lived at the residence; and "insofar as the affidavit indicated that [the CI] had provided information for monetary consideration, it did not characterize his motives as altogether pure." <u>Martinez-Garcia</u> at 1216-17.

In this case, the affidavit established essentially none of the additional facts necessary to overcome the failure to disclose the CI's incentives.  First and foremost, the affidavit failed to set forth whether the CI had any track record at all, let alone whether it was a positive record.   It further failed to describe how the CI came to possess the information that was included in the affidavit.  These are the two key components required for a court to evaluate an informant's credibility.   Additionally, no other informants provided any corroboration of the CI's identification of Mr. Cole as the user of the symbol-string moniker, and the government did not independently corroborate this proposition.  Essentially, with the CI's credibility eradicated, there is nothing left to support a finding of probable cause for the warrant.

The lack of additional information supporting probable cause dooms the warrant, as failure to disclose in a warrant application the fact that a confidential informant is receiving

MOTION TO SUPPRESS EVIDENCE
(*Kaleb Cole*; No. CR20-032 JCC) - 12

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

benefits in exchange for information will invalidate the prior probable cause finding unless there is sufficient additional information in the affidavit to overcome the failure.  See Martinez-Garcia, 397 F.3d at 1216-17; Meling, 47 F.3d at 1554-55.  For this reason, the Court should hold an evidentiary hearing as a precursor to suppression.

### 3.  The Court should ultimately suppress the fruits of the search.

After the hearing, suppression should result if, after including the including the omitted information in the warrant affidavit, probable cause is lacking. See Franks, 438 U.S. at 171-72. For all the reasons outlined above, after the hearing the defense will ask that the Court suppress all evidence uncovered pursuant to the warrant and any derivative evidence.

### C.  The good faith exception to the warrant requirement does not apply in this case.

The good faith exception cannot save the warrant issued in this case for two reasons: 1) because the warrant was so lacking in indicia of probable cause that reliance on the warrant was objectively unreasonable, and 2) because the exception does not apply in cases where the magistrate in issuing a warrant was misled by information in the affidavit.

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court announced a "good faith" exception to the application of the exclusionary rule. Id. at 922–23.  This exception provides that the exclusionary rule should not bar the government's introduction of evidence obtained by officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated. Id. at 918–21.  The good faith test is an objective one, and turns on whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.  Id. at 922, United States v. Luong, 470 F.3d 898, 902 (9th Cir. 2006). There are at least four situations in which reliance on a warrant cannot be considered objectively reasonable, and for which the good faith exception therefore cannot apply: (1) when the affiant

MOTION TO SUPPRESS EVIDENCE
(*Kaleb Cole*; No. CR20-032 JCC) - 13

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

knowingly or recklessly misleads the judge with false information; (2) when the judge wholly abandons his or her neutral role; (3) when the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid.  Luong, 470 F.3d at 902.

The warrant in this case fails in regard to the first and third tests: the affiant knowingly misled the magistrate who issued the warrant, and the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable.  These will be addressed in reverse order.

### 1.  The affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable.

The test for reasonable reliance is whether the information contained in the affidavit is sufficient to "create disagreement among thoughtful and competent judges as to the existence of probable cause."  Leon, 468 U.S. at 926.

In United States v. Underwood, 725 F.3d 1076 (2013), the Ninth Circuit found the good faith exception inapplicable because the warrant affidavit was so lacking in indicia of probable cause that belief in its existence was unreasonable.   The only fact supporting the probable cause finding was an observation that the defendant delivered two wooden crates to two co-conspirators in the parking lot of a hardware store.  Id. at 1078.  There were no other accompanying facts in the affidavit to support an inference that the crates contained drugs or that the defendant knew (or should have known) the crates contained drugs. The affidavit contained an assertion that a DEA agent believed that the crates contained drugs, but did not provide underlying facts that could be used to judge the reasonableness of such belief.  Id. at 1086.  The court explained that "the

MOTION TO SUPPRESS EVIDENCE
(Kaleb Cole; No. CR20-032 JCC) - 14

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

affidavit fails to set forth a sufficient factual basis for the conclusion that Underwood was a courier for an ecstasy trafficking organization" and suppressed the evidence.

Under this precedent, the good-faith exception should not be applied to Mr. Cole's case. As discussed above, just as in <u>Underwood</u>, no facts in the warrant affidavit supported a finding of probable cause to believe that Mr. Cole was the person who had committed the crimes discussed in the affidavit.  The affidavit contained only an unsupported conclusion that the person discussed in the affidavit was in fact Mr. Cole and did not contain any details on which the magistrate could independently evaluate this assertion.   This level of detail is so grossly insufficient to probable cause that reliance on the warrant that issued based on the affidavit was unreasonable.  Consequently, the good faith exception cannot save the warrant issued in this case.

**2.  The exception does not apply in this case because the magistrate was misled by information in the warrant affidavit.**

The warrant affidavit in this case contained a material omission regarding the provision of benefits to the CI in exchange for his cooperation with the government's investigation.  As such, the Court should reject any argument that the good faith exception applies here.  As noted above, in <u>Leon</u> itself the Supreme Court expressly held that the good faith exception does not apply to motions to suppress brought under <u>Franks</u> where the judge was misled by a false or misleading statement.  <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897, 923 (1994) ("Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth.").  Thus, it does not apply here.

MOTION TO SUPPRESS EVIDENCE
(*Kaleb Cole*; No. CR20-032 JCC) - 15

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the defense respectfully requests that the Court grant its motion to suppress all evidence seized during the unlawful search of Mr. Cole's alleged residence located at 1218 Oxon Run, Montgomery, Texas, in this matter.

Respectfully submitted this 13th day of August, 2021.

BLACK & ASKEROV, PLLC

_____

Christopher Black, WSBA No. 31744
Attorney for Kaleb Cole
Black & Askerov, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
Phone:        206.623.1604
Fax:            206.658.2401
Email:         chris@blacklawseattle.com

MOTION TO SUPPRESS EVIDENCE
(*Kaleb Cole*; No. CR20-032 JCC) - 16

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401