Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>KALEB COLE,<br><br>   Defendant. | NO. CR20-032JCC<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B)** |

The United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, and Thomas M. Woods and Seth Wilkinson, Assistant United States Attorneys for said District, respectfully responds to defendant's motion *in limine* to exclude evidence under Federal Rule of Evidence 404(b).

## INTRODUCTION

The defendant seeks to exclude two categories of information under Federal Rules of Evidence 404(b) and 403. First, the defendant moves to exclude certain items tying him to Atomwaffen, such as an Atomwaffen flag and patch. These items are not being offered under Federal Rule of Evidence 404(b) as "other bad acts" evidence. Rather, these items are intrinsic to the offense. The posters that the defendant created—which are the subject of the charges—included the Atomwaffen logo. The government is entitled to show that Cole was

Response to Motion *in limine*
*United States v. Cole*, CR20-032JCC – 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  in fact part of Atomwaffen by showing that he possessed an Atomwaffen flag and other
2  imagery associated with Atomwaffen.
3       Second, the defense seeks to exclude any references to the fact that the defendant was
4  served with an Extreme Risk Protection Order ("ERPO") under which his guns were seized.
5  But the ERPO is a key part of the story in this case: the very reason Cole set out to
6  intimidate C.I., the Seattle news reporter, is that C.I. produced a news story about Cole being
7  served with the ERPO. Therefore, the evidence is intrinsic to the offense. In addition,
8  evidence of the ERPO is also key to establishing identity. To prove its case, the government
9  needs to prove that Cole was the person who communicated in the encrypted chats using the
10  moniker पकजबतचषथबल. An important part of that evidence is statements made by
11  पकजबतचषथबल in which पकजबतचषथबल admits that *he* was served with an ERPO. Thus,
12  the ERPO is critical to establishing the link between Cole and पकजबतचषथबल. Evidence of
13  the existence of the ERPO is therefore admissible to prove identity under Rule 404(b)(2).
14       The defense complains that one piece of evidence that the government plans to
15  introduce—a King 5 article about the ERPO that पकजबतचषथबल referenced in his chats—is
16  unfairly prejudicial. The government, however, will be redacting the substance of the article
17  to exclude most of the statements that are outlined in the defense's motion.

### LEGAL STANDARD

**A. The Law Regarding Evidence Intrinsic to the Crime**

     Rule 404(b) generally governs the admissibility of "bad act" evidence. However, as the Ninth Circuit has explained, "bad act" "evidence that is "'inextricably intertwined' with a charged offense is independently admissible and is exempt from the requirements of Rule 404(b)." *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013). Intrinsic evidence includes evidence that is "part of the transaction that serves as the basis for the criminal charge." *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) (internal quotation omitted); *see also United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) ("The policies underlying rule 404(b) are inapplicable when offenses committed as part of a "single

Response to Motion *in limine*
*United States v. Cole*, CR20-032JCC – 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

criminal episode" become other acts simply because the defendant is indicted for less than all of his actions." (internal quotation omitted)).  Intrinsic evidence also includes evidence that is "necessary . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995).  As the Ninth Circuit has emphasized, the "jury cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *Id.*

### B. The Law Regarding Rule 404(b)

Rule 404(b)'s purpose is to exclude so-called "bad man evidence," that is, evidence of crimes or bad acts intended to impugn the defendant's character for the purpose of showing the defendant's propensity to commit a crime. *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007).  However, Rule 404(b)(2) specifically authorizes the admission of evidence "of any other crime, wrong, or act" to prove the identity of the defendant.  *See generally United States v. Major*, 676 F.3d 803, 808 (9th Cir. 2012) ("Rule 404(b) is a rule of inclusion-not exclusion . . . ."). "Once it has been established that the evidence offered serves one of the[] purposes [set forth in Rule 404(b)(2), the relevant Advisory Committee Notes make it clear that the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence." *Curtin*, 489 F.3d at 944.  Indeed, the Ninth Circuit has held that Rule 404(b) is an "inclusionary rule – 'evidence of other crimes is inadmissible under this rule only when it proves nothing but the defendant's criminal propensities.'" *United States v. Sneezer*, 983 F.3d 920, 924 (9th Cir. 1992) (quoting *United States v. Diggs*, 649 F.2d 731, 737 (9th Cir. 1981)).

Once the Court decides that evidence serves a purpose other than propensity, "the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *United States v. Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008) (citing United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002)).  "[T]he greater the degree of probativeness possessed by the evidence, the greater the showing of unfair

Response to Motion *in limine*
*United States v. Cole*, CR20-032JCC – 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prejudice that will be required to exclude the evidence." *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir. 1982). The mere fact that the defendant's case will be harmed by the admission of Rule 404(b) evidence does not constitute unfair prejudice under Rule 403. *United States v. Parker*, 549 F.2d 1217 (9th Cir. 1977) ("[E]vidence relevant to a defendant's motive is not rendered inadmissible because it is of a highly prejudicial nature . . . The best evidence often is.").

Although Rule 404(b) evidence will always work to the detriment of the defendant in the sense that it may contribute to the jury finding that he acted with the requisite intent and knowledge, that is not "unfair prejudice" within the meaning of Rule 403. Rather, evidence is only unfairly prejudicial "if it has an undue tendency to suggest a decision on an improper basis such as emotion or character rather than evidence presented on the crime charged." *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991). *See Bailleaux*, 685 F.2d at 1111 n. 2 ("As used in Rule 403, 'unfair prejudice' means that the evidence not only has a significant impact on the defendant's case (as opposed to evidence which is essentially harmless), but that its admission results in some unfairness to the defendant from its non-probative aspect.").

## ARGUMENT

### A. The Atomwaffen Evidence Recovered from the Defendant's Room

At trial, the government intends to offer the following pieces of evidence recovered from Cole's room: (1) an Atomwaffen flag; (2) jackets with Atomwaffen patches; and (3) a Nazi flag. The government also intends to offer similar evidence recovered from common areas of the residence, namely Nazi flags and an Atomwaffen patch.[1] Finally, the government intends to offer a skull mask recovered from Cole's car.

---

[1] In his motion, Cole argues that the government "has not provided sufficient evidence showing that the items found belong to Mr. Cole at all." Dkt. 220 at 3. As outlined above, the bulk of the items that the government seeks to admit came from Cole's room. There is overwhelming evidence that the room in fact belonged to Cole—for example, his wallet and passport were located in the room. The other items were from the common areas of the residence. Although it is clear that Cole was associated with these items, given they mirrored the type of items found in his room, the defense would be free at trial to attempt to cast doubt on this fact—however, that argument goes to the weight of the evidence, not its admissibility.

Response to Motion *in limine*
*United States v. Cole*, CR20-032JCC – 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

All of these items are admissible as intrinsic to the offense. The victims in this case received posters that contained the Atomwaffen logo. The posters also told victims that they had been visited by their local "Nazis" and contained images of swastikas and persons wearing skull masks. Since this offense was carried out in the name of Atomwaffen and Nazis, the government is entitled to show that Cole was in fact associated with these groups. The materials recovered from Cole's room do just that. The Atomwaffen flag, jackets, and patch all contain the same Atomwaffen logo that appeared on the posters. The Nazi flags, of course, support the statement on the posters that victims had been visited by "Nazis." In these circumstances, such evidence is admissible as direct evidence of the scheme. *Cf. United States v. Suggs*, 374 F.3d 508, 517 (7th Cir. 2004) ("Tattoos that help to establish gang membership are admissible to support a showing of a joint venture or conspiracy.").[2]

Further, since the posters depicted people wearing skull masks, the fact that a skull mask was recovered from Cole's car is highly relevant, and also direct evidence of the scheme. Indeed, the mask is the exact same design as an image in one of the charged posters:

---

[2] The defense cites *Spivey v. Rocha*, 194 F.3d 971, 978 (9th Cir. 1999), which is easily distinguishable. In that case, a defendant sought to admit evidence that his victim was a gang member, to support the defendant's contention that he armed himself because members of the gang commonly carried weapons. The Court rejected this claim on the ground that "the tendency of members of a gang to carry weapons does not lead reasonably to any inference as to whether a gang member was armed on a given occasion." *Id.* This is a far cry from the facts of this case—where the crime was committed in the *name* of the organization, and the proof is offered to show that the defendant was in fact a member of the organization.

Response to Motion *in limine*
United States v. Cole, CR20-032JCC – 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



Skull Mask from Cole's Car



Skull Mask on Poster

In any event, even if this evidence were extrinsic to the charges, it clearly is admissible under Rule 404(b)(2) as relevant to the defendant's motive for committing the offense. *See, e.g.*, *United States v. LaFond*, 783 F.3d 1216, 1222 (11th Cir. 2015) (evidence of defendants' membership in white supremacist gang relevant to show motive in attacking Black inmate). Moreover, this evidence can hardly be seen as overly prejudicial in the context of this case—the items recovered from Cole's residence simply track what was depicted in the posters. Thus, the jury is going to see images of swastikas, the Atomwaffen logo, and skull masks, and hear evidence that Cole was tied to these images by creating the posters. Considering the nature of Cole's conduct and the charges, it is simply not possible to sanitize this case of references to Nazis and white supremacy. Given all of this, Cole will suffer no unfair prejudice if the jury also hears that the items depicted from the posters were found in his room.

In sum, the evidence recovered from Cole's residence should be admitted.

**B. The ERPO Evidence**

Evidence of the ERPO is admissible for two reasons. First, it is intrinsic evidence because it is a key event in the chronology leading up to the charged plot, and it explains Cole's motive for committing the crime. The government will present evidence that Cole became motivated to threaten journalists after C.I. produced a story about the ERPO being
Response to Motion *in limine*  
*United States v. Cole*, CR20-032JCC – 6

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

1  issued against Cole.  Indeed, that story is the very reason that Cole selected C.I. as one of his
2  targets.  Further, the issuance of the ERPO is part of the reason why Cole left Washington in
3  late 2019 and moved to Texas, where he then organized the charged plot.  Therefore,
4  evidence about the existence of the ERPO is necessary to allow the prosecution to present a
5  "coherent and comprehensible story regarding the commission of the crime." *Vizcarra–*
6  *Martinez*, 66 F.3d at 1012-13.

7  Second, evidence of the ERPO is important to establishing identity.  One key issue at
8  trial will be establishing that Cole was the person who used the पकजबतचषथबल moniker in
9  the chats.  The government will show that Cole was the person using this moniker, by among
10 other things, showing that the user made posts acknowledging that he was Cole.
11 Specifically, as outlined in government's trial brief, the user of पकजबतचषथबल referenced
12 news articles in a manner that made clear that the user of the moniker was Cole.  Dkt. 212 at
13 20-22, 31-33.  These articles include stories about Cole being served with an ERPO and that
14 an arrest warrant had later issued from the case.  *Id.*  The fact that Cole was subject to an
15 ERPO and an arrest warrant for violating the ERPO is highly relevant because
16 पकजबतचषथबल admits that *he* was subject to an ERPO and arrest warrant.  In addition,
17 पकजबतचषथबल specifically commented on articles about Cole's ERPO and arrest warrant
18
19 in a manner that *implicitly admits that he is Cole*.  Accordingly, the chats and evidence of the
20 ERPO and arrest warrant are admissible to prove identity, that is, that पकजबतचषथबल is
21 Cole.

22 Moreover, this identity evidence is not excludable under Rule 403.  To exclude
23 evidence under this Rule, Cole bears the burden of establishing that the probative value of
24 the evidence is "substantially outweighed" by its risk of unfair prejudice.  Fed. R. Evid 403.
25 Cole cannot do so.  As discussed above, the probative value of the evidence is great—it
26 establishes that the defendant was the person who committed the crime.  And, the evidence is
27 reasonably limited so as not to be unfairly prejudicial.  That is, the government is not seeking
28 to gild the lily by offering pictures of Cole's arsenal or by delving into the ERPO's specific

Response to Motion *in limine*
*United States v. Cole*, CR20-032JCC – 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

findings that Cole is a danger to the community. Instead, the government will offer the limited fact that Cole was subject to an ERPO, as well as statements by Cole about being served with the order. Moreover, any prejudice to Cole can be minimized by the fact that the jury can be given a limiting instruction. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). And, the government will not refer to the ERPO or the arrest warrant at trial other than to link him to the moniker or to explain the chronology of events or the reasons for Cole's animus against C.I.

Finally, the defense complains in particular about a King 5 article that the government intends to offer. Specifically, the defense complains that the article—which that the user of पकजबतचषथबल referenced in his chats—several inflammatory statements about Cole. The government, however, intends to offer a heavily redacted version of the article, limited to the following content:

> ## Police seize guns from avowed neo-Nazi in Snohomish County
>
> **According to court documents, Kaleb Cole is the leader of a small, but dangerous white supremacist group called "Atomwaffen."**
>
> Author: C.I. ▇▇▇▇▇▇▇
> Published: 6:51 PM PDT October 17, 2019
> Updated: 6:51 PM PDT October 17, 2019
>
> SEATTLE — Police have seized military-style firearms from an avowed neo-Nazi in Snohomish County in what is believed to be a first-of-its-kind case in Washington state.

Thus, any prejudice from the article will be greatly diminished by the fact that the jury will see only a small portion of the article.

In sum, the evidence is admissible under Rule 402(b).

//
//

Response to Motion *in limine*
*United States v. Cole*, CR20-032JCC – 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

For the foregoing reasons, the Court should deny the defense's motion.

Dated this 21st day of September, 2021.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*/s/ Thomas M. Woods*
THOMAS M. WOODS
SETH WILKINSON
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-3903
Phone: 206-553-7970

Response to Motion *in limine*
*United States v. Cole*, CR20-032JCC – 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970