The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>KALEB COLE,<br><br>    Defendant. | No. CR20-032 JCC<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

Defendant, Kaleb Cole, by undersigned counsel, submits the following memorandum in advance of his sentencing in this matter, scheduled before this Court for Tuesday, January 11, 2022, at 9 a.m.

I. **Introduction**

Kaleb Cole is 26 years old. He was 24 at the time of the activities underlying his conviction in this matter. Mr. Cole has no criminal history whatsoever. He grew up in relative isolation in rural parts of Washington State, was picked on and marginalized as a youth, and ultimately found community through the internet as a teen. Unfortunately, but not coincidentally, those people who offered Mr. Cole community also espoused many unpopular and problematic beliefs. Over time, Mr. Cole became indoctrinated into these groups and philosophies. He lacked opposing influences in his life and craved some kind of community. Tied to that community,

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 1

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

however, and as a requirement of ongoing acceptance in it, was the malignant weight of socially unacceptable philosophies. It was part of the package, even if Mr. Cole was just looking for friends.

Mr. Cole eventually became a member of Atomwaffen Division (AWD). AWD is (or was) a loosely associated group of mostly young men, mostly with similar backgrounds of ostracization. The group was organized around white separatist philosophies. While individual members, or former members, of the group have committed violent acts in their individual capacities in the past, at least during the three-year investigation of Mr. Cole, the group did not plan or engage in any violent actions. Instead, they held conferences and discussed their ideas and philosophies.

Mr. Cole and three co-defendants were charged with multiple crimes stemming from their alleged involvement in Operation Erste Saul, which was a plan to send threatening communications to journalists and activists. The indictment positioned Mr. Cole's co-defendant Cameron Shea as the lead defendant. The evidence showed that he instigated the operation and the Court ultimately sentenced him as a leader. Mr. Cole's co-defendants, including Mr. Shea, pleaded guilty and were sentenced by the Court to prison terms ranging from time-served for Mr. Parker-Dipeppe to 36 months for Mr. Shea. Mr. Cole proceeded to trial, where he put the government to its burden but did not present frivolous examination or argument. Mr. Cole did not testify. The jury returned guilty verdicts on all counts.

Mr. Cole now appears before the Court for sentencing. The probation office has recommended a sentence of 78 months. As set forth in detail below, such a sentence would be far more than necessary to accomplish the goals of sentencing in this case. Most significantly, it would create a significant and unjustified disparity between the sentences imposed on Mr. Cole's

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 2

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

co-defendants and Mr. Cole. It would be more than double Mr. Shea's sentence. While there may be a few other minor distinctions between Mr. Shea and Mr. Cole, the real difference between them is that Mr. Shea entered a guilty plea while Mr. Cole proceeded to trial. Because that is not an appropriate basis on which to impose a sentence, and because nothing else justifies such a disparate sentence for Mr. Cole, the Court should decline to follow the recommendation of the Probation Office.

## II. Defense Sentencing Recommendation

The defense respectfully recommends a sentence of 36 months in custody for Mr. Cole.

## III. Basis for Defense Sentencing Recommendation

The defense submits that an analysis of all of the factors outlined in 18 U.S.C. § 3553(a) as they apply to this case supports the defense recommendation.

### A. Mr. Cole's background and personal characteristics

Mr. Cole is 26 years old and has no criminal history whatsoever. Mr. Cole was born in Everett, Washington, and grew up mostly in rural parts of Western Washington. Mr. Cole's parents separated when he was young and he has no siblings. Growing up, Mr. Cole moved multiple times, living in Skagit, Snohomish, Whatcom, and Island counties. The constant moving created great instability in his life, as he was required to change schools each time he moved. He spent many summers with his maternal grandparents. He lived with his mother most of the time growing up but moved in with his father in high school. Mr. Cole and his father have a strong relationship and his father continues to support him throughout this process.

Growing up, Mr. Cole was regularly bullied and had few friends in school. This caused strong feelings of isolation for Mr. Cole. Mr. Cole never enjoyed school and found himself struggling to keep up with the schoolwork. Once Mr. Cole moved in with his father when he was

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 3

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

16 years old, he started attending school online and graduated in 2014. Since graduating, Mr. Cole has been employed in various jobs. He primarily worked for temporary agencies in Snohomish County. He eventually moved to Texas in 2019, where he worked for a medical supply company prior to his arrest in this matter.

Mr. Cole grew up in a Pagan household. In his teens, Mr. Cole began listening to music that advanced nationalistic themes. This led him to read nationalistic literature and attending concerts with people who carried such nationalistic ideals. Mr. Cole was especially able to find a sense of community through online chat groups. Unfortunately, those groups included individuals who held unpopular and problematic opinions. Eventually, Mr. Cole became indoctrinated in these groups as he sought out the continued sense of community he felt while participating. Mr. Cole ultimately became a member of AWD. AWD allowed him to constantly chat with and meet up with individuals across the country and eventually led him to where he is today. At the time of this incident, Mr. Cole was a young 24-year-old who desired to feel a part of a community as an escape from the constant isolation he felt growing up. Unfortunately, the community he joined held extreme problematic views.

Mr. Cole has many people in his life who have supported him throughout this process. See Exhibit 2 (Letters of Support). He has worked hard to maintain a strong relationship with his father, even though his father did not agree with Mr. Cole's beliefs at the time of the events that led to the charges in this matter. Mr. Cole's maternal grandparents are also incredibly supportive of him. They speak his with him often and even flew to Washington to be present throughout his trial. His grandparents especially worry about Mr. Cole being incarcerated during the COVID-19 pandemic. Mr. Cole actually contracted COVID-19 while incarcerated in December of 2020, and was forced to isolate as a result. Mr. Cole also has a long-time significant other who has

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 4

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

supported him throughout his incarceration. When released, Mr. Cole hopes to be a productive member of society by starting his own business, possibly in metal working or welding.

### B. The nature and circumstances of Mr. Cole's involvement in the offense

The FBI investigated Mr. Cole and AWD for about three years prior to the events of this case. They utilized both a confidential source and undercover agent in this investigation. One or the other or both of them were present during the periodic meetings and conferences that took place during this period. Both testified at trial that they were not aware of AWD either engaging in or planning any violent actions during the entire period of the investigation. Instead, AWD held conferences and camps, where they discussed ideas and philosophies, produced messaging videos, and sometimes shot guns, completely legally. Neither Mr. Cole nor anyone else there was planning anything remotely like the horrific attacks we have seen too frequently in this country, and to raise the specter of those incidents when the government has actual knowledge that Mr. Cole was not involved in anything remotely similar is unfair and prejudicial.

Similarly, the ongoing focus on Mr. Cole's legal gun ownership prior to his arrest in this matter is something the Court should disregard in imposing sentence. It is true that Mr. Cole owned guns at a time when he was legally permitted to have them. It is also true that he was stripped of his right to possess guns in the state of Washington when an extreme risk protection order (ERPO) issued against him in September, 2019. The King County Superior Court granted this order based on an uncontested petition by a Seattle Police Officer. The petition is based on many of the same generalized allegations about AWD provided as background to the Court in this matter. The petition did not describe even a single violent act committed, or threat made, by Mr. Cole. The petition further acknowledged that Mr. Cole had never been arrested, let alone convicted of a crime. Instead, it set forth activities attributed generally to AWD, and pointed to

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 5

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

Mr. Cole's alleged association with that group as a basis for the order. Mr. Cole did not appear for the hearing on the petition because he was unable to find a lawyer who could help him and because he was afraid of the media opprobrium that he expected. He was therefore unable to present the truth about his activities or the activities of AWD, and the order issued. After the order issued, Mr. Cole did not possess firearms in violation of its terms. The order is not enforceable outside Washington state. See RCW 9A.04.030.[1] Further, and significantly, there is no indication that Mr. Cole ever used a firearm in Texas in an inappropriate or illegal manner or that he had any plans to do so.

What Mr. Cole was charged with is conspiring "to threaten journalists and activists, particularly Jews and other minorities, with the intent to cause fear of bodily harm, harass,

---

[1] RCW 9A.04.030 establishes criminal jurisdiction for Washington state and provides:

> The following persons are liable to punishment:
> (1) A person who commits in the state any crime, in whole or in part.
> (2) A person who commits out of the state any act which, if committed within it, would be theft and is afterward found in the state with any of the stolen property.
> (3) A person who being out of the state, counsels, causes, procures, aids, or abets another to commit a crime in this state.
> (4) A person who, being out of the state, abducts or kidnaps by force or fraud, any person, contrary to the laws of the place where the act is committed, and brings, sends, or conveys such person into this state.
> (5) A person who commits an act without the state which affects persons or property within the state, which, if committed within the state, would be a crime.
> (6) A person who, being out of the state, makes a statement, declaration, verification, or certificate under chapter 5.50 RCW which, if made within the state, would be perjury.
> (7) A person who commits an act onboard a conveyance within the state of Washington, including the airspace over the state of Washington, that subsequently lands, docks, or stops within the state which, if committed within the state, would be a crime.

No provision of this statute appears to extend jurisdiction to cover Mr. Cole's alleged possession of a firearm in Texas after the issuance of the order.

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 6

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

intimidate, and retaliate against unfavorable reporting," and with mailing such threatening communications. See Superseding Indictment, Dkt. # 94. The indictment alleges that the defendants created threatening posters, researched people to target and their contact information, and then both mailed posters and affixed them directly to peoples' homes. Id. The complaint filed in this matter sets forth details about Mr. Cole's alleged role in this activity: "Cole had access to the entire target list, helped to develop threatening posters to leave at the victims' homes, and made suggestions to Operation Erste Saule coconspirators on who to target, how to find people's home addresses, and, among other things, how to film the Operation when it happened." Complaint, Dkt. # 1 at 9. The government offered evidence at trial that the jury found supported the allegations. The evidence of Mr. Cole's involvement consisted almost solely of a chat string and a recording of Mr. Cole made in January of 2019.

As established by the evidence introduced at trial, Mr. Cole's intent in regard to the posters was to respond to what he regarded as unfair treatment and exposure of him by journalists and others. He was under the impression that AWD was engaged in some sort of propaganda war with journalists and organizations like the Anti-Defamation League and he wanted to respond in kind. This view was obviously misguided and grandiose. And while Mr. Cole specifically talked about how they should not take it too far and should not actually threaten anyone with physical harm, the jury ultimately found that the messages did in fact go too far. Nevertheless, what was also clear from the evidence at trial is that Mr. Cole had no intention of actually harming anyone.

C. **Sentencing Guidelines**

The Court should calculate the sentencing guidelines in the following manner.

DEFENDANT'S SENTENCING MEMORANDUM
(Kaleb Cole; No. CR20-032 JCC) - 7

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

1. **Summary of Guidelines Calculations**[2]

| | |
|---|---:|
| Base Offense Level – U.S.S.G. § 2A6.2: | 18 |
| Specific Offense Characteristics | |
| Victim Related Adjustment – U.S.S.G. § 3A1.1: | +3 |
| Adjusted Offense Level | 21 |
| Advisory Range (Offense Level 21, CHC I) | 37-46 months |

2. *Analysis of Guideline Calculations*

The probation office has proposed that the Court apply additional guideline enhancements, including Threatened Use of a Dangerous Weapon[3] and Aggravating Role. The defense respectfully submits that the Court should not apply these two enhancements.

The government bears the burden of establishing the applicability of a guideline enhancement by a preponderance of the evidence. See United States v. Tam, 240 F.3d 797, 803 (9th Cir 2001) ("At sentencing, the government bears the burden of proving factors enhancing a sentence by a preponderance of the evidence."). The Ninth Circuit has held that "the district court may rely on undisputed statements in the PSR at sentencing . . . . However, when a defendant raises an objection to the PSR, the district court is obligated to resolve the factual dispute, and the government bears the burden of proof . . . . The court may not simply rely on the factual statements in the PSR." United States v. Ameline, 409 F.3d 1073, 1085-86 (9th Cir. 2005)(en banc). In making factual determinations, the Court may consider any information, so long as it has

---

[2] The defense analyzes the guidelines for the Count Group 1 only and will not analyze the guidelines pertaining to the groups consisting of Count 2 and Count 4 because, as correctly noted in the PSR, such groups are disregarded under U.S.S.G. § 3D1.4(c).

[3] The defense objected to the enhancement for threat of a dangerous weapon in the attached objections to the draft Presentence Report (Exhibit 1). The defense maintains that objection but does not present additional argument herein.

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 8

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

sufficient indicia of reliability to support its probable accuracy. U.S.S.G. § 6A1.3 (Policy Statement).

Aggravating Role (U.S.S.G. § 3B1.1(a))

The defense objects to the application of the aggravating role enhancement because the facts do not establish that Mr. Cole was an "organizer or leader" of the conduct at issue. The aggravating role adjustment should not apply for two reasons. First, Mr. Shea was the sole leader and organizer of the operation. Second, Mr. Cole merely made suggestions to the group and those suggestions do not amount to leadership or control. Thus, the aggravating role adjustment should not apply.

U.S.S.G. § 3B1.1(a) states that the Court should increase the offense by 4 levels is the defendant was an "organizer or leader" of a criminal activity that involved five or more participants. "In order to impose the enhancement, there must be a showing that the defendant had control over other participants or organized other participants for the purpose of carrying out the charged crimes." United States v. Holden, 908 F.3d 395, 402 (9th Cir. 2018) (internal quotations omitted). A defendant organizes other participants if he has the necessary influence and ability to coordinate their behavior so as to achieve the desired criminal results. Id.; see also United States v. Doe, 778 F.3d 814, 826 (9th Cir. 2015); United States v. Avila, 95 F.3d 887, 890 (9th Cir 1996) (stating that "some degree of control or organizational authority over others is required" in order for a § 3B1.1 enhancement to apply). Holden, 908 F.3d at 402.

Further, "a suggestion is not leadership" for purposes of § 3B1.1. United States v. Harris, 999 F.3d 1233, 1236 (9th Cir. 2021). The Ninth Circuit has stated that "[t]hough there may be some direction inherent in a suggestion, the Guidelines are clear that a suggestion is not enough for application of the enhancement." Id.

DEFENDANT'S SENTENCING MEMORANDUM
(Kaleb Cole; No. CR20-032 JCC) - 9

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

The evidence does not establish by a preponderance of the evidence that Mr. Cole was a leader or organizer of the people involved in the criminal activity at issue in this case. Rather, the evidence clearly establishes Mr. Cole's codefendant, Mr. Shea, (known in the chats as "Krokodil") was the sole leader and organizer of the operation.

The evidence shows that Mr. Shea singlehandedly started the chat group, "Operation Erste Saule," and invited others, including Mr. Cole to join the chat. Upon creating the group, Mr. Shea alone explained his reasoning for creating the chat, and asked who would be willing to join:



See Gov. Trial Ex. 100. There is no evidence that Mr. Cole assisted Mr. Shea in formulating the plan, creating the chat group, or inviting others to join. In fact, there is no evidence that Mr. Cole even knew about Mr. Shea's plans for Operation Erste Saule until Mr. Shea created the chat group

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 10

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

and explained his goals for the group. Mr. Shea continued to lead the group throughout its months of conversation. For example, once others in the group started collecting addresses, Mr. Shea further directed the group as to how to carry out the operation:



See Gov. Trial Ex 104.

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 11

Black & Askerov, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

Mr. Shea also discussed why newer members of the group would distribute the posters:



Id.

As is evident from these messages, the others in the group were under the direction of Mr. Shea. Mr. Shea picked the date of the operation and instructed the other members as to how to avoid detection from law enforcement. Mr. Shea was the sole leader and organizer of Operation Erste Saule.

Additionally, the probation office's contention that Mr. Cole was a leader of the operation because he "provided instructions" to others as to how to carry out the plan is not supported by the evidence. Like the others in the group, Mr. Cole made suggestions as to how to undertake certain aspects of the operation. This includes the contributions of codefendants Mr. Parker-Dipeppe (known in the chats as "Azazel") and Mr. Garza (known in the chats as "Roman"). For example, Mr. Garza suggested the individuals do the following while carrying out the operation:

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 12

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401



See Gov. Trial Ex. 107. Mr. Parker-Dipeppe made suggestions as well:



See Gov. Trial Ex. 108. Another member of the group, using the name "OldScratch" provided the group with ways to find the addresses of the intended targets:

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 13

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401



See Gov. Trial Ex. 101. Similar to these suggestions, Mr. Cole proposed at one point that others in the chat use knives to pin dolls to trees outside reporters' homes (which never happened) and suggested video-recording the activities (which seemingly also did not happen). These chat interactions show that many members of the group made suggestions for how to carry out aspects of the plan, like Mr. Cole, and those suggestions were not instructions to the group. Mr. Cole's contributions to the chats were no different than the contributions made by other members.

Further, the individuals in the chat each took on different roles in the plan. For example, some members, including Mr. Garza and Mr. Parker-Dipeppe, actively sought out names and addresses of people to target and ultimately delivered the posters to those individuals on January 25, 2020. Mr. Shea purchased stamps and packaging tape for the operation and eventually mailed posters to three individuals in Washington State. Mr. Cole created the posters but did not deliver or mail them. In sum, the members of the chat equally participated in carrying out the plan by performing their own specific tasks. Mr. Cole did not direct or control anyone else in the group.

The indictment itself alleges that all of the co-defendants participated in almost every aspect of the crime. See Dkt. No. 94 at 2-3. It alleges that every co-defendant "conducted research online to identify journalists and advocates to threaten," "compiled the home addresses and other personal information for the above-mentioned journalists and advocates, using online sources," and "planned and plotted to threaten the above-mentioned journalists and advocates through

DEFENDANT'S SENTENCING MEMORANDUM
(Kaleb Cole; No. CR20-032 JCC) - 14

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

online communications among themselves and others." Id. The only thing Mr. Cole is alleged to have done that the others did not do is create the posters. But simply creating the posters does not establish leadership because it does not include an element of control or influence over other people. See Holden, 908 F.3d at 402.

Ultimately, the evidence does not establish that Mr. Cole was a leader of the operation. Mr. Shea organized and coordinated the operation, and the others in the group gave their own ideas as to how to carry out the plan. Each member of the group collectively contributed and made suggestions as to how the operation should unfold. Mr. Cole had no direction or control over the others in the group and participated to the same extent as the others. The government describes Mr. Cole as a leader of AWD but does not indicate what it means to be a leader, or even a member, of this organization, whether there is some formal structure for the organization, or how members of this organization communicate with each other. Further, even if Mr. Cole was a leader of AWD, he was not charged or tried for that role. Thus, because a "suggestion is not leadership" and Mr. Cole was not a leader or organizer of Operation Erste Saule, the aggravating role enhancement should not apply.

**D.    The sentence proposed by the defense avoids unwarranted disparity between Mr. Cole and his co-defendants.**

18 U.S.C. § 3553(a)(8) directs courts to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. As described in the preceding sections of this memo, all of the co-defendants in this case engaged in similar, albeit not identical, conduct. While it could reasonably be found that Mr. Garza's and Mr. Parker-Dipeppe's participation in the operation, and general level of culpability, were less extensive than Mr. Cole's, the same cannot be said of Mr. Shea. And because that is the case, it

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 15

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

would be unjust to impose a sentence on Mr. Cole that is appreciably longer than the Court imposed on Mr. Shea.

Mr. Shea was the most culpable of the co-defendants. He formulated the plan to send the posters, created the chat group to plan and discuss the operation, directed most aspects of the operation, carried out significant parts of the operation (including mailing multiple letters himself), and obliterated the chat group in an attempt to cover his tracks. Mr. Cole, on the other hand, participated in chats and made some suggestions about aspects of the operation, just as all the co-defendants (as well as many uncharged individuals) did. Again, the only thing Mr. Cole did that others did not do is create the posters. But, he did not participate in placing or mailing them, which Mr. Shea did do. The defense contends that there is no reasonable way to describe Mr. Cole as being more heavily involved in the crimes in this case than Mr. Shea, which is no doubt why the government positioned Mr. Shea as the lead defendant in the matter.

It further appears that Mr. Shea and Mr. Cole are not otherwise too dissimilar in terms of background. They are both quite young, and both have no criminal history prior to this case. They both faced some difficult circumstances as youths, but neither suffered from poverty or abuse. Mr. Shea did submit an apology to the court in conjunction with his sentencing, but that was of course an expedient action for him to take. It is not something that justifies a sentence for Mr. Cole more than double Mr. Shea's, especially given the procedural posture of Mr. Cole's case and his potential for appeal, which limits anything that he might be inclined to say. At most, Mr. Shea's apology counterbalances his more extensive role in the offense and puts him and Mr. Cole on equal footing.

At bottom, it is hard to articulate a reasonable basis for a longer sentence for Mr. Cole than Mr. Shea other than that Mr. Shea entered a guilty plea while Mr. Cole proceeded to trial.

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 16

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

This is not a permissible basis for a sentence. The Due Process Clause prohibits "punish[ing] a person because he has done what the law plainly allows him to do." Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978).

**E. The sentence proposed by the defense is sufficient, but not greater than necessary, to accomplish the goals set forth in 18 U.S.C. § 3553(a).**

"The statute, as modified by Booker, contains an overarching provision instructing district courts to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing, including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant." Kimbrough v. United States, 552 U.S. 85, 102 (2007)(internal quotations deleted).

The sentence proposed by the defense accomplishes these goals. It is a significant sentence that reflects the seriousness of the conduct Mr. Cole was convicted of and provides a significant deterrent effect. 36 months is a long sentence for a young man with no criminal history. This is particularly true given that Mr. Cole has already been incarcerated for almost two years during one of the most difficult times to be held in custody in memory. The COVID pandemic resulted in Mr. Cole: 1) being held in conditions where he was forced to be exposed to COVID-19 and unable to do anything about it, 2) being held repeatedly in lockdown conditions, without being able to see or talk to anyone, and 3) actually contracting COVID.

Such a sentence also accounts for the fact that Mr. Cole is young and still has a lot of growing up to do. Most people gain wisdom as they grow older. It also takes into account the fact that we live in a deeply divided country where highly impressionable youths, like Mr. Cole, are constantly bombarded with divisive narratives by the media and are all too often exposed to violent and divisive rhetoric espoused by elected leaders at all levels of the government. It is not

difficult to see, given the current state of affairs in our country, how a twenty-something like Mr. Cole in search of community could have been drawn into extremist ways of thinking through internet chat rooms and social media. There is every reason to think that Mr. Cole has learned a great deal from his prosecution, incarceration and conviction, and that those lessons will resonate more and more over time. This is particularly true given that Mr. Cole has never engaged in violent behavior or planned violent behavior. Further, he has family and friends who love him and will support him in living in a pro-social manner upon his release from custody.

IV. **Conclusion**

The defense respectfully asks the Court to follow its sentencing recommendation, which reflects the seriousness of the convicted conduct, accounts for Mr. Cole's background, comports with the sentencing guidelines, and compares fairly to the sentences imposed on Mr. Cole's co-defendants.

Respectfully submitted this 4th day of January, 2022.

BLACK & ASKEROV, PLLC

_____
Christopher Black
Teymur Askerov
Sarah Kohan

Attorneys for Kaleb Cole
705 Second Avenue, Suite 1111
Seattle, WA 98104
Phone: 206.623.1604
Fax: 206.658.2401
Email: chris@blacklawseattle.com
tim@blacklawseattle.com
sarah@blacklawseattle.com

DEFENDANT'S SENTENCING MEMORANDUM
(*Kaleb Cole*; No. CR20-032 JCC) - 18

BLACK & ASKEROV, PLLC
705 Second Avenue, Suite 1111
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401